UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**TIM BOYER,**

    **Plaintiff,**

  v.

**CLINTON COUNTY SHERIFF'S OFFICE,** *et al.***,**

    **Defendants.**

Case No. 1:22-cv-212
**JUDGE DOUGLAS R. COLE**
Magistrate Judge Bowman

## OPINION AND ORDER

This cause comes before the Court on Defendants Clinton County Sheriff's Office, Dispatcher Lori Elkins, Sheriff Ralph D. Fizer, and Sheriff's Deputy Michelle Smith's Motion to Dismiss (Doc. 6) Plaintiff Tim Boyer's Amended Complaint (Doc. 3). For the reasons discussed below, the Court **GRANTS** Defendants' Motion (Doc. 6) and **DISMISSES** Boyer's Amended Complaint (Doc. 3) **WITH PREJUDICE**.

## BACKGROUND

Plaintiff Tim Boyer alleges Defendants Clinton County Sheriff's Office, Dispatcher Lori Elkins, Sheriff Ralph D. Fizer, and Sheriff's Deputy Michelle Smith violated his constitutional rights stemming from an incident occurring at his home on October 7, 2019. (Doc. 3, #57). According to Boyer, his ex-girlfriend and his ex-wife together entered his home and began removing his personal property. (*Id.*). At the time, he alleges he could not lawfully enter the structure because a protection order prohibited him from doing so. (*See id.* at #59). After a neighbor notified him of the alleged ongoing theft, Boyer contacted the Clinton County Sheriff's Office to request

help. (*Id.*). Boyer spoke with Dispatcher Lori Elkins, who sent Sheriff's Deputy Melissa Smith. (*Id.* at #59–60). But according to Boyer, Smith proceeded to improperly arrested Boyer for violating his protection order, in effect permitting his ex-girlfriend and ex-wife to continue pilfering his belongings. (*Id.* at #61). In connection with that arrest, Deputy Smith also searched and seized Boyer's truck. (*Id.* at #62). As a result, the women allegedly took some $60,000 of Boyer's property. (*Id.*). And after all this, the prosecutor ultimately dropped the charges against Boyer for violating the protection order. (*Id.* at #79).

Boyer responded by filing this pro se lawsuit in state court on March 24, 2022, proceeding under 42 U.S.C. § 1983 and (apparently) 42 U.S.C. § 12132. (Doc. 2, #47). On April 11, Boyer filed an Amended Complaint, but his only meaningful amendment was to add the text of various Ohio statutes he believed Defendants had also violated. (Doc. 3).

Read in the light most favorable to Boyer, Boyer's Amended Complaint asserts § 1983 claims based first on three underlying Fourth Amendment violations: (1) false imprisonment/unlawful arrest; (2) unreasonable search and seizure; and (3) excessive use of force (in arresting him). (Doc. 3, #62, 78). Second, Boyer alleges that Elkins and/or Smith[1] further violated his constitutional rights when they "aid[ed] in the crime of burglary." (*Id.* at #77–78). And third, he alleges that Sheriff Fizer and his Office also violated Boyer's constitutional rights (or at least bear independent liability

---

[1] Throughout this Opinion, the Court frequently refers to "Elkins and/or Smith" because Boyer often fails to clarify who he is alleging to have actually violated the rights he is asserting. This distinction does not alter the Court's analysis or holding.

for the Deputies' conduct) by failing to discipline Elkins and/or Smith following the incident. (*Id.*). Finally, Boyer appears to believe Defendants violated his rights under Title II of the Americans with Disabilities Act. (*Id.* at #58). For the harm he suffered because of these alleged violations, Boyer seeks $1,590,020 in monetary relief. (*Id.* at #79).

Not long after Boyer amended, Defendants removed to this Court citing federal question jurisdiction. (Doc. 1). Then, on April 28, 2022, Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 6). They argue the statute of limitations bars each of Boyer's claims. (*Id.* at #95). Defendants also assert that 42 U.S.C. § 12132 is not relevant to this matter based on Boyer's factual allegations. (*Id.* at #97). Boyer responded (Doc. 8), and Defendants replied in support. (Doc. 10). The matter is now ripe.

## STANDARD OF REVIEW

Defendants have moved to dismiss Boyer's Amended Complaint under Rule 12(b)(6). This requires the Court to consider whether Boyer has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In making that determination, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotation marks omitted). That is so, however, only as to well-pled factual allegations. The Court need not accept "'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (brackets omitted)

3

(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Likewise, the Court need not accept as true any legal conclusions alleged in a complaint; "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.*

At the pleadings stage, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). "To survive a motion to dismiss, in other words, [Boyer] must make sufficient factual allegations that, taken as true, raise the likelihood of a legal claim that is more than possible, but indeed plausible." *Id.* (citations omitted). In sum, the well-pled facts must be sufficient to "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, such that the asserted claim is "plausible on its face." *Iqbal*, 556 U.S. at 678.

Under the *Iqbal/Twombly* plausibility standard, courts play an important gatekeeper role, ensuring that claims meet a threshold level of factual plausibility before defendants endure the potential rigors (and costs) of the discovery process. Parties engage in discovery not to determine whether a claim exists, but instead to gather evidence for an already plausibly stated claim. *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

**LAW AND ANALYSIS**

Boyer appears to seek relief under two statutes, § 1983 and Title II of the ADA (42 U.S.C. § 12132). Defendants argue that both theories (assuming Boyer is in fact

4

asserting an ADA claim) suffer a common defect—each is untimely under the relevant statute of limitations. (Doc. 6). Defendants also argue that Boyer's ADA claim, even if timely, is insufficiently pled. (*See id.* at 6).

As discussed below, the Court agrees that the statute of limitations bars each of Boyer's § 1983 claims. Moreover, even assuming Boyer intended to plead an ADA claim, the Court concludes that he failed to meet the *Iqbal/Twombly* plausibility standard. Accordingly, the Court **GRANTS** Defendants' Motion (Doc. 6).

### A. The Court Finds The Relevant Statute Of Limitations Bars Boyer's § 1983 Claims.

In seeking to dismiss Boyer's § 1983 claims on statute of limitations grounds at the pleading stage, Defendants face a daunting task. Dismissal on limitations grounds is appropriate only "if the allegations in the [Amended Complaint] affirmatively show that the claim is time-barred." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022) (internal quotations omitted). Moreover, "the statute of limitations is an affirmative defense, and it is the defendant's burden to show that the statute of limitations has run." *Id*. In determining whether the defendant has met that burden, the Court generally must consider: (i) the applicable statute of limitations time period, (ii) when the action accrued (and thus set that time period in motion), and (iii) whether any tolling period exists. *See, e.g.*, *Hollis v. Erdos*, 480 F. Supp. 3d 823, 829–30 (S.D. Ohio 2020).

Start with the applicable limitations period. Because Congress did not provide a statute of limitations in the text of 42 U.S.C. § 1983, the law of the state in which the incident occurred provides the applicable period. *Sevier v. Turner*, 742 F.2d 262,

5

272 (6th Cir. 1984). Here, that is Ohio. And, "[i]n Ohio, causes of action premised upon 42 U.S.C. § 1983 are subject to a two-year statute of limitations." *Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 691 (6th Cir. 2017) (citing *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855–56 (6th Cir. 2003)).

On the other hand, federal law controls the time at which a § 1983 action accrues. *Sevier*, 742 F.2d at 272. And it provides that accrual occurs "when the plaintiff knows or has reason to know of *the injury* which is the basis of his action." *Id.* at 273 (emphasis added). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id.* Here, as of October 7, 2019, Boyer knew that the two women had allegedly stolen his property, and that Defendants had not prevented it (or perhaps even facilitated it). He also knew that Deputy Smith instead arrested him and searched and seized his truck.

Based on the events of that day and the consequences of those events, Boyer asserts three overarching theories of § 1983 liability. First, he claims Elkins and/or Smith violated his Fourth Amendment rights in three separate, but related, ways— in falsely imprisoning/unlawfully arresting him, in using excessive force to do so, and in unreasonably searching and seizing his truck. (Doc. 3, #57). (The Court briefly notes that, although Boyer uses the terms "unlawful arrest" and "false imprisonment" interchangeably, (*see id.*), the two are different, which may matter for accrual purposes. *See Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). Still, as discussed below, this does not alter the Court's holding.) Second, he argues Elkins and/or Smith

6

violated his rights by "aid[ing] in the crime of burglary" that same evening. (*Id.* at #78–79). Finally, he asserts that Sheriff Fizer and his Office violated Boyer's rights by failing to discipline Elkins and/or Smith following this incident for their alleged misconduct. (*Id.* at #62, 78). Somewhat complicating things, Boyer fails to connect the latter two allegations to violations of any specifically identified constitutional rights. Yet construing his pro se claim generously, as case law requires, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), the Court understands Boyer's "aiding burglary" claim as alleging a violation of the Fourteenth Amendment's Due Process Clause. The Court also views Boyer's failure to discipline allegation as a *Monell* liability claim stemming from the Sheriff's failure to discipline Elkins or Smith for their alleged Fourth/Fourteenth Amendment violations. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989); *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 695–96 (1978).[2]

Also complicating matters, Boyer's Amended Complaint provides no other dates—beyond his arrest date—for the Court to consider in assessing when his § 1983 causes of action accrued. The Court, however, may take judicial notice of the contents of state court records to evaluate Defendants' Rule 12(b)(6) motion. *See Rodic v.*

---

[2] Boyer seems to suggest that, in addition to violating his federal constitutional rights, Defendants violated Ohio state statutes. (Doc. 3, #65–77). But this is to little avail. First, by its plain language, § 1983 provides a cause of action only based on violations of federal law. 42 U.S.C. § 1983; *Harrison v. Hall*, No. 5:19-cv-P32, 2019 WL 1213102, at *2 (W.D. Ky. Mar. 14, 2019) ("[T]he violation of state statutes … does not give rise to a claim under § 1983, which addresses deprivations of rights 'secured by the Constitution and laws' of the United States."). And Boyer cites no other authority, and the Court knows of none, that entitles him to collect damages from Sheriff Fizer and his subordinates based merely on their failure to follow the state laws he cites. Boyer does not argue, for example, that those state laws include a private right of action.

7

*Thistledown Racing Club, Inc.*, 615 F.2d 736 (6th Cir. 1980); *Scarso v. Cuyahoga Cnty. Dep't of Human Servs.*, No. 89-4071, 1990 WL 169645, at *2 (6th Cir. Nov. 2, 1990) ("[T]he lower court properly took judicial notice of facts in the public record, specifically the records of state court proceedings."). And this includes in determining when Boyer's causes of action accrued. *See, e.g.*, *Colwell v. Holiday Inn, Inc.*, No. 1:12-cv-661, 2012 WL 11029721, at *2 (S.D. Ohio Sept. 17, 2012), *report and recommendation rejected on other grounds*, 2014 WL 3342568 (S.D. Ohio July 8, 2014). Accordingly, the Court takes notice that, following Boyer's arrest of October 7, 2019, the magistrate arraigned him on October 8, 2019, releasing him on his own recognizance. Clinton County Municipal Court Case No. CRB1901310; (Doc. 6-1, #101).

Armed with this information, the Court concludes that the allegations in Boyer's Amended Complaint "affirmatively show" that all of Boyer's § 1983 claims fall outside the applicable two-year limitations period. *Snyder-Hill*, 48 F.4th at 698. In particular, Boyer filed his original Complaint on March 24, 2022, (Doc. 2), but each of his § 1983 claims accrued before March 24, 2020. Let's take them in the order described above. However styled, his "unlawful arrest"/false imprisonment claim accrued upon his arraignment and release—October 8, 2019.[3] *Wallace*, 549 U.S. at

---

[3] As noted, a Fourth Amendment false imprisonment claim accrues, at the latest, when the defendant receives proper legal process authorizing his detention. *Wallace* 549 U.S. at 391–392. That is because, from that point forward, the "imprisonment" is no longer "false." For a criminal defendant, this typically occurs when an arrestee appears before a magistrate for an arraignment or initial appearance. *See id.* But if a magistrate binds over an unlawfully arrested defendant for trial, and does so *without* probable cause, the defendant has not received valid legal process. Thus, his or her claim of false imprisonment will remain a continuing tort, pushing the accrual date back. *See Manuel v. City of Joliet*, 137 S. Ct. 911,

8

391–392 (recognizing a claim for false imprisonment, of which false arrest is a subset, accrues once the plaintiff receives proper legal process by appearing for arraignment). His claim that officers used excessive force in accomplishing that arrest, meanwhile, accrued when Deputy Smith applied the allegedly excessive force on October 7, 2019. *Hodge v. City of Elyria*, 126 F. App'x 222, 226 (6th Cir. 2005). And his unreasonable search and seizure claim likewise accrued when he learned officers searched and seized his truck—which took place in front of his eyes on October 7, 2019. *Harper v. Jackson*, 293 F. App'x 389, 392 n.1 (6th Cir. 2008) (recognizing a claim for unreasonable search or seizure accrues once the plaintiff learns of the same). All occurred well before March 24, 2020.[4]

Turning to Boyer's second theory—that the officers "aided" in the crime of burglary, thereby violating the Fourteenth Amendment—that cause of action likewise accrued on October 7, 2019. That is the day when the supposed "crime" (i.e., burglary) occurred. And Boyer does not allege he discovered some essential fact to establish his "aiding" claim following that day, such as the existence of a nefarious

---

919–20 (2017) (recognizing this issue). Here, Boyer alleges his arrest, arraignment, and subsequent (brief) prosecution all occurred without a legal basis—e.g., without probable cause. Yet even if this were so, Boyer's claim still accrued upon arraignment because the magistrate released him on his own recognizance. Clinton County Municipal Court Case No. CRB1901310; (Doc. 6-1, #101). That October 8, 2019, release ended any allegedly illegal detention, and thus ended any "false imprisonment."

[4] Had Boyer been convicted, his causes of action arising from his arrest would not accrue until the time of the conviction's reversal or vacation. *See Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 639 (6th Cir. 2007) (citing *Heck v. Humphrey*, 512 U.S. 477, 484–87 (1994). But that is not the case here. (Doc. 6, #79); (Doc. 6-1, #103); Clinton County Municipal Court Case No. CRB1901310.

9

agreement between the Sheriff's Office and Boyer's exes. Rather, he bases this claim solely on the events that occurred on October 7, 2019—making that claim untimely.

That leaves Boyer's *Monell* liability claim. The question of when a *Monell* claim accrues turns out to be a thornier issue than one might imagine. Lower courts have divided into two camps. In the first, courts hold that a *Monell* claim accrues when the underlying conduct giving rise to potential *Monell* liability occurred. *See, e.g.*, *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 n.5 (3d Cir. 2013); *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011); *Rich v. Hersl*, No. CV ELH-20-488, 2021 WL 2589731, at *13–14 (D. Md. June 24, 2021); *Caples v. City of Phoenix*, No. CV-14-02619-PHX-SRB, 2018 WL 4042115, at *3–4 (D. Ariz. June 28, 2018), *aff'd*, 804 F. App'x 595 (9th Cir. 2020).

In the second camp, courts follow what they often call a "delayed accrual" theory. *See, e.g.*, *Laboy v. Ontario County*, 318 F. Supp. 3d 582, 588 (W.D.N.Y. 2018). Under this theory, a *Monell* claim does not accrue until a plaintiff is at least on inquiry notice that the conduct the plaintiff experienced is part of some pattern or practice sufficient to give rise to *Monell* liability. *See, e.g.*, *Ouellette v. Beaupre*, 977 F.3d 127, 139–40 (1st Cir. 2020); *Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 313–14 (D. Md. 2020); *Wilson v. Hays*, 228 F. Supp. 3d 1100, 1111 (S.D. Cal. 2017); *McCarty v. Gilchrist*, 938 F. Supp. 1018, 1032–33 (D. Mass. 1996). As to this latter camp, most of the cases rest, directly or indirectly, on the Second Circuit's decision in *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995).

The Sixth Circuit has yet to address the issue. With no guidance from that court, and having considered the competing viewpoints, this Court lands in the first camp. To start, as multiple courts have noted, the *Pinaud* language that provides the foundation for the delayed-accrual view is dicta. *See King-White*, 803 F.3d at 763; *Tengood*, 529 F. App'x at 210 n.5. *But see Laboy*, 318 F. Supp. 3d at 588 ("The case law in [the Second] Circuit overwhelmingly follows *Pinaud*."). And the Second Circuit has itself disavowed the language, at least to some extent. *Lawson*, 446 F. App'x at 329 (refusing to adopt *Pinaud* "dictum" when doing so would "eviscerate" longstanding accrual rule) (quotation omitted). At least some other circuit courts have rejected the theory, as well. *See, e.g., King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015) ("We likewise decline to change our well-settled accrual rules based on dicta from the Second Circuit's *Pinaud* opinion."); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 n.5 (3d Cir. 2013) ("There is also no basis in our precedent for applying such a 'delayed accrual' theory."); *see also Caples*, 2018 WL 4042115, at *3–4 (rejecting the delayed accrual theory in a decision that the Ninth Circuit later affirmed). *But see Ouellette v. Beaupre*, 977 F.3d 127, 139–40 (1st Cir. 2020) (recognizing the "delayed accrual" theory because a *Monell* claim necessarily cannot be brought until the discovery of the injurious policy or custody). Closer to home, the district court decisions in this circuit that have discussed the issue largely appear to hold that a *Monell* claim accrues when the underlying *injury* occurs. *See, e.g., Jacks v. City of Youngstown*, No. 4:19CV2689, 2021 WL 3288572, at *7 (N.D. Ohio Aug. 2, 2021) ("The limitations period on his *Monell* claims are similarly

11

triggered by the date his property was demolished.") (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)); *Lawrence v. Benton County*, No. 05-1011-T-AN, 2006 WL 768239, at *2 (W.D. Tenn. Mar. 23, 2006) ("Plaintiff's [*Monell* liability] cause of action as it relates to his arrest accrued [the day of his arrest]."); *cf. Rennick v. City of Cincinnati*, No. 1:06-cv-580, 2007 WL 2248818, at *4 (S.D. Ohio Aug. 2, 2007) (holding that a failure to protect claim accrued at the time of the injury and not the time of the subsequent cover up).

That also makes sense as a matter of first principles. As a general matter, a cause of action accrues when the plaintiff knows (or reasonably should know) of his *injury*. *Sevier*, 742 F.2d at 272. To be sure, in the § 1983 context, a plaintiff may not learn he has a viable cause of action against a *supervisor* for an injury that a subordinate causes until additional facts are known (such as a policy or pattern). But as the court observed in *Lander v. JPMorgan Chase Bank National Association*, "the accrual of the cause of action does not await the plaintiff's recognition that he has grounds for a lawsuit, or discovery that the defendant behaved tortiously, or recognition that the plaintiff might have a winning lawsuit." No. 4:21-cv-353, 2022 WL 838376, at *6 (E.D. Tex. Feb. 24, 2022), *report and recommendation adopted*, 2022 WL 829330 (E.D. Tex. Mar. 18, 2022) (quoting *Porter v. Charter Med. Corp.*, 957 F. Supp. 1427, 1438-39 (N.D. Tex. 1997) (internal citations omitted)); *see also Sevier*, 742 F.2d at 272. This Court agrees. An injury triggers the plaintiff's obligation to investigate who may bear liability for that harm. Moreover, a supervisor's failure to supervise or discipline his or her subordinate does not somehow work a separate and

12

distinct injury on the plaintiff. Rather, *Monell* simply provides a mechanism for holding a supervisor *liable* for the injury that a subordinate directly caused. So in this Court's view, the "delayed accrual" inquiry asks the wrong question—when the plaintiff learned he could *expand* the pool of viable defendants to include the supervisor—and thus arrives at the wrong result.

Under this Court's view of the proper approach to accrual, Boyer's *Monell* claim is time-barred. The *Monell* claim accrued on October 7, 2019, when Elkins and/or Smith engaged in the conduct for which Boyer now contends that Sheriff Fizer and his Office should bear liability.

Boyer's only response is that he did not learn, until at least March 25, 2020, "that no one was going to be held accountable for unlawfully arresting me."[5] (Doc. 8, #107). Without a *Pinaud*-like "delayed accrual" theory, however, that simply does not matter. His cause of action against Sheriff Fizer and his Office accrued—and the limitations clock started ticking—on October 7, 2019.

That leaves one possibility—tolling. The Court acknowledges that, in appropriate situations, the statute of limitations might be tolled. *See, e.g.*, *Boyd v. United States*, 932 F. Supp. 2d 830, 840 (S.D. Ohio 2013). But two problems. First,

---

[5] Boyer also uses his Response to Defendants' Motion to Dismiss to seemingly allege ineffective assistance of counsel. (Doc. 8, #107). However, this claim does not appear in his Amended Complaint. Moreover, Defendants are not proper defendants for an ineffective assistance of counsel claim. Indeed, seeing as the prosecutor dismissed the case against Boyer, the Court struggles to understand how Boyer hopes to recover monetary damages from the Sheriff's Office for his attorney's alleged errors. Further confirming this mismatch, even if Boyer demonstrated his counsel performed deficiently, he is at most entitled to a new trial. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (describing the relief from an ineffective assistance of counsel claim as a new trial).

Boyer has not argued or even suggested tolling. Second, even if he had, Boyer has alleged no facts to create a plausible basis for concluding he is entitled to tolling here. The Court knows of no applicable Ohio tolling provision. *See Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 484–85 (1980) (recognizing state tolling statutes apply in § 1983 actions); *see, e.g.*, O.R.C. § 2305.16 (tolling the limitations period where a person is within the age of minority or of unsound mind). And should Boyer request equitable tolling, he fares no better. State tolling principles apply, *see Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 845 (6th Cir. 2015), and under Ohio law, "[t]he doctrine of equitable tolling is to be applied sparingly and only in exceptional circumstances." *Roach v. Vapor Station Columbus, Inc.*, No. 21AP-511, 2022 WL 2211529, at *2 (Ohio Ct. App. June 21, 2022). "A litigant seeking equitable tolling must demonstrate he diligently pursued his rights, but some extraordinary circumstance stood in his way and prevented timely action." *Id.* And "[t]he doctrine is generally limited to circumstances in which a litigant is intentionally misled or tricked into missing the filing deadline." *Id.* This all should come as little surprise. After all, as a general matter, equity favors the vigilant, not those who sleep on their rights. *See Nat'l Fire Ins. Co. v. Thompson*, 281 U.S. 331, 338 (1930).

Nothing that would give rise to equitable tolling occurred here. The Amended Complaint does not even remotely suggest "extraordinary circumstances" or trickery prevented Boyer from filing his action within the two-year statute of limitations. He simply chose not to do so.

Therefore, the Court finds the statute of limitations bars all of Boyer's § 1983 claims. The Court **DISMISSES** those claims **WITH PREJUDICE**.

**B.     The Court Finds Boyer Did Not Plausibly Allege An ADA Claim.**

To the extent Boyer intended to pursue one or more ADA claims, he has failed to adequately plead them. In his Amended Complaint, Boyer perfunctorily references "section 12132" in his statement of jurisdiction: "[t]his action arises under Title 42 of the United States Code … section 12132." (Doc. 3, #58). The Court assumes Boyer references 42 U.S.C. § 12132 of Title II of the Americans with Disabilities Act. Yet this is Boyer's only reference to that statute in his entire Amended Complaint. For example, he does not cite the ADA in his grounds for relief. (*See id.* at #61–78). Nor does Boyer allege any facts giving rise to a plausible inference that he can meet the elements of such a claim—e.g., that he has a protected disability, that he is otherwise qualified, etc. *See Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015) (listing the elements of a prima facia Title II ADA discrimination claim). Accordingly, the Court finds that Boyer has failed to plausibly allege—indeed, has failed to allege at all—that disability discrimination occurred here. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Separately, the Sheriff's Office argues that the applicable two-year statute of limitations bars any ADA claim Boyer may assert. (Doc. 6, #97 (citing *McCormick v. Miami Univ.*, No. 1:10-cv-345, 2011 WL 1740018, at *12 (S.D. Ohio May 5, 2011)). Consistent with the discussion above, though, resolving that limitations issue would require the Court to determine when Boyer's alleged ADA claim accrued. Without

some factual foundation providing an indisputable answer to that question, and with no understanding as to what Boyer's ADA claim even is, the Court declines to speculate about when such a claim may have accrued.

That said, because Boyer provides no factual allegations supporting an ADA claim, the Court **DISMISSES** this claim **WITH PREJUDICE**.

## CONCLUSION

For the reasons discussed, the Court **GRANTS** Defendants' Motion (Doc. 6) and **DISMISSES** Boyer's Amended Complaint (Doc. 3) **WITH PREJUDICE**. The Court **DIRECTS** the Clerk to enter judgment and terminate the matter from the docket.

**SO ORDERED.**

December 9, 2022
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**